UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON SWIGER and JULIO CRUZ, on behalf of themselves and others similarly situated, | ) ) ) | CASE NO.:  1:15-cv-02196 |
| | ) | CHIEF JUDGE CHRISTOPHER C. |
| Plaintiffs, | ) | CONNER |
| | ) | |
| vs. | ) | |
| | ) | |
| UTZ QUALITY FOODS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION………………………………………………………....………1

I. FACTUAL AND PROCEDURAL BACKGROUND........................................2

   A. The Action...................................................................................................2

   B. Negotiation of the Settlement………………………………………………..3

   C. The Settlement Terms………………………………...……………………..4

II. MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT………..……..7

   A. The FLSA Class Should Be Certified For Settlement Purposes……..……..8

      1.   Minimal Factual and Employment Disparities Exist Between
           Plaintiffs and the FLSA Class Members……………………………..9

      2.   Defendant's Primary Defense is Identical For Class Representatives
           and Class Members………………………….………………...…12

      3.   The Settlement Distributions are Fair, Reasonable, and Adequate….12

           a.   *The Individual Payments are Fair, Reasonable,
               and Adequate*………………………………………….....13

           b.   *Class Representatives' and Discovery Class Representatives
               Service Awards are Proper and Reasonable…….* ………….15

           c.   *The Attorneys Fees and Expenses to Class Counsel are Proper
               and Reasonable*………………………….…………………19

               i.   The size of the fund created and number of
                    persons benefitted………………………………....…23

               ii.   The presence of absence of substantial objections by
                    members

of the class to the settlement terms and/or fees
requested by counsel…………………………….…..23

iii.    The skill and efficiency of the attorneys involved…….24

iv.    The complexity and duration of the litigation…………24

v.    The risk of non-payment………………………………25

vi.    The amount of time devoted by Class Counsel…..……25

vii.    Awards in similar cases………………………………27

4.    There is A Bona Fide Dispute Between The Parties………….…..28

III.  MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION……..30

A. Preliminary Approval of the Settlement Under Rule 23(b)
is Warranted……………………………………………………..30

1.    Certification of the Rule 23 Classes Are Appropriate For Purposes
of Settlement…………………………………………………...30

a.    *The Numerosity Requirement of Rule 23(a)(1) is Met*……....31

b.    *The Commonality Requirement of Rule 23(a)(2) is Met*……...31

c.    *The Typicality Requirement of Rule 23(a)(3) is Met*…..…….33

d.    *The Adequacy Requirement of Rule 23(a)(4) is Met*…………34

e.    *The Predominance and Superiority Requirement of
Rule 23(b)(3)*…...………………………………………..35

2.    The Class Notices Satisfy Rule 23 and Due Process……….……36

B. Approval of the Settlement Under Rule 23(e) is Warranted……….……38

1.    The Four-Factor Standard Is Satisfied…………...……..……..…….39

    a.    *The Settlement Negotiations Occurred at Arm's Length*……..40

    b.    *There Was Sufficient Discovery*……………..……………….40

    c.    *The Proponents of the Settlement are Experienced In Similar Litigation*…………………………………………….42

    d.    *The Class Representatives Concur with the Settlement; To Date, No Members of the Class Have Objected*…………..43

IV.    CONCLUSION………...…..…………………………………….……43

CERTIFICATE OF SERVICE…………………………………………….45

# TABLE OF AUTHORITIES

## Cases

*Aboud v. City of Wildwood*,
2013 U.S. Dist. LEXIS 70083 (D.N.J. 2013) .......................................................38

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .........................................................................................31

*Arpi v. Sternbach Holdings, LLC*,
2012 U.S. Dist. LEXIS 183648 (S.D.N.Y. 2012) ............................................... 38

*Austin v. Pa. Dep't of Corr.*,
876 F. Supp. 1437 (E.D. Pa. 1995).......................................................................42

*Bessey v. Packerland Plainwell, Inc.*,
2007 WL 3173972 (W.D. Mich. 2007)……………………………….………20, 21

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).............................................................................................19

*Bogosian v. Gulf Oil Corp.*,
621 F. Supp. 27 (E.D. Pa. 1985)……………………………….………………….16

*Bouaphakeo v. Tyson Foods, Inc.*,
765 F.3d 791 (8th Cir. 2014)…………………………………………..……..8

*Brumley v. Camin Cargo Control, Inc.*,
No. 08-cv-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) …………….…...9, 12

*Bredbenner v. Liberty Travel, Inc.*,
No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)….9, 13, 15, 18, 19, 27, 28, 29

*Calarco v. Healthcare Services Group, Inc.*,
2015 U.S. Dist. LEXIS 46950 (M.D. Pa. Apr. 7, 2015)........................................16

*Cendant Corp. Litigation*,
264 F.3d 201 (3d Cir. 2001) ...................................................................40

*Chemi v. Champion Mortg.*,
2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009); ......................................19

*Court Awarded Attorney Fees, Report of Third Circuit Task Force*,
108 F.R.D. 237 (1985).....19

*Creed v. Benco Dental Supply Co.*,
No. 3:12-CV-01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013)...........23, 27

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ...........................................................15

*Day v. NLO*,
851 F. Supp. 869, (S.D. Ohio 1994)....................................................36

*DiClemente v. Adams Outdoor Advertising, Inc.*,
2016 U.S. Dist. LEXIS 88394
(M.D. Pa. July 8, 2016)..................................................................38

*D.R. by MR. v. East Brunswick Bd. of Educ.*,
109 F.3d 896 (3d Cir. 1997) ...............................................................39

*Drummond v. Herr Foods Inc.*,
No. 2:13-CV-05991-BMS, 2016 WL 7013512
(E.D. Pa. Sept. 9, 2016)............................................................13, 18

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ............................................................7, 39

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).........................................................................38

*Fegley v. Higgins*,
19 F.3d 1126 (6th Cir. 1994)............................................................20

*Ford v. Lehigh Valley Restaurant Group, Inc.*,
2016 U.S. Dist. LEXIS 31732 (M.D. Pa. Mar. 10, 2016)………..…….……….23

*Frye v. Baptist Memorial Hosp.*,
No. CIV. 07-2708, 2010 WL 3862591 (W.D.Tenn. September 27, 2010)….……10

*General Tel. Co. of S.W. v. Falcon*,
457 U.S. 147 (1982)…………………………………….….…....……...33, 36

*Grayson v. K Mart Corp.*,
79 F.3d 1086 (11th Cir .1996)…………………………………………………10

*Grunin v. International House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ..................................................................37

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)……………………………………….………..23

*In re AT&T Corp.*,
455 F.3d 160 (3d Cir. 2006).........................................................19

*In re Cendant Corp. Litig.*,
264 F.3d 201, 256 (3d Cir. 2001).........................................................20

*In re Community Bank of N. Va.*,
418 F.3d 277 (3rd Cir. 2005)...............................................................34

*In re Diet Drugs Prod. Liab. Litig.*,
369 F.3d 293 (3d Cir. 2004) .................................................................37

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995).................................................................19

*In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig.*,
2013 U.S. Dist LEXIS 18332 (E.D. Pa. 2013)................................................30, 31

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009).................................................................17

*In re Janney*,
2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009) ...................................................17, 19

*In re Prudential Ins. Co. America Sales Practice Litig. Agent*,
148 F.3d 283 (3d Cir. 1998)…………...............................................................19, 30

*In re Safety Components, Inc. Sec. Litig.*,
166 F Supp. 2d 72 (D.N.J. 2001) ...........................................................................27

*In re SmithKline Beckman Corp. Sec. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990)...........................................................................22

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)...............................................................7, 31, 39, 40

*Jamison v. Butcher & Sherrerd*,
68 F.R.D. 479 (E.D. Pa. 1975)................................................................................42

*LaChance v. Harrington*,
965 F. Supp. 630 (E.D. Pa. 1996)......................................................................36, 37

*Lenahan v. Sears, Roebuck & Co.*,
2006 U.S. Dist. LEXIS 60307 (D. NJ. 2006) .........................................................19

*Lusardi v. Xerox Corp.*,
118 F.R.D. 351 (D.N.J. 1987) ..................................................................................9

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982)..............................................................9, 13, 28, 29

*Martin v. Foster Wheeler Energy Corp.*,
No. 3:06-cv-0878, 2008 WL 906472 (M.D. Pa. Mar. 31, 2008)……………...18, 27

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).........................................................................................36, 37

*O'Brien v. Ed. Donnelly Enters., Inc.*,
575 F.3d 567 (6th Cir. 2009)……………………………………….…..…….8, 10

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982) ...............................................................................39

*Rawlings v. Prudential Properties, Inc.,*
9 F.3d 513 (6th Cir. 1993)…………………………………………...………21

*Ripley v. Sunoco, Inc.,*
287 F.R.D. 300 (E.D. Pa. 2012) ..........................................................................31

*Rutherford v. City of Cleveland,*
137 F.3d 905 (6th Cir. 1998)………………………………………..…....33

*Sakalas v. Wilkes Barre Hosp. Co.,*
No. 3:11-cv-0546, 2014 WL 1871919 (M.D. Pa. May 8, 2014)…………………18

*Senter v. General Motors Corp.,*
532 F.2d 511, 524-525 (6th Cir. 1976)……………………………………………33

*Shaw v. Toshiba America Information Systems, Inc.,*
91 F. Supp. 2d 942 (E.D. Tex. 2000)…………………………………………...21

*Speed Shore Corp. v. Denda,*
605 F.2d 469 (9th Cir. 1979) ...............................................................................39

*Sullivan v. DB Invs., Inc.,*
667 F.3d 273 (3d Cir. 2011)..........................................................................15, 35

*Tavares v. S-L Distribution Co., Inc.,*
2016 U.S. Dist. LEXIS 57689 (M.D. Pa. May 2, 2016)………………………….16

*UAW v. General Motors Corp.,*
497 F.3d 615 (6th Cir. 2007)………………………………………....…31, 36

*Wal-Mart Stores v. Dukes,*
131 S. Ct. 2541 (2011) .........................................................................................30

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*

396 F.3d 96 (2d Cir. 2005) ......................................................................39

*Williams v. Aramark Sports, LLC,*
2011 U.S. Dist. LEXIS 102173 (E.D. Pa. 2011) ………………………….............33

**Statutes**

29 U.S.C. § 216(b) .......................................................................2, 8, 19

**Rules**

Fed. R. Civ. P. 23 (a)(1).........................................................................31

Fed. R. Civ. P. 23(a)(2)..........................................................................31

Fed. R. Civ. P. 23(a)(3)..........................................................................33

Fed. R. Civ. P. 23(a)(4)..........................................................................34

Fed. R. Civ. P. 23(b)(3)..........................................................................35

## INTRODUCTION

Plaintiffs Jason Swiger and Julio Cruz ("FLSA Class Representatives"), on behalf of themselves, the current Opt-In Party Plaintiffs, and the FLSA Eligible Settlement Participants ("FLSA Class"), and Julio Cruz, Julia Williams, Tom Holt, and Nicholas DeRose ("Rule 23 Class Representatives"), on behalf of themselves and the members of the proposed Rule 23 Classes ("Rule 23 Classes"), and Defendant Utz Quality Foods, Inc. ("Utz") submit this Memorandum in support of their Joint Motion for Final Approval of an FLSA Settlement and for Preliminary Approval of a Class Action Settlement ("Joint Motion").

The Parties reached settlement after engaging in a lengthy mediation session with a well-regarded mediator, followed by numerous telephone discussions with the mediator and between the Parties themselves. The settlement terms, including the settlement amount, reflected the Parties' and mediator's view of the relative merits of the Plaintiffs' claims, the relative strengths of the defenses asserted by Defendant (including whether the class should be decertified and whether a prior state administrative order established good faith on the part of the Defendant), and the nature and extent of the alleged damages.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Action

On September 15, 2015, Brian Jurden ("Mr. Jurden"), an individual, on behalf of himself and others similarly situated, filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, against Defendant Utz Quality Foods, Inc. ("Utz") in the United States District Court for the Southern District of Ohio, Case No. 2:15-cv-2833. On September 22, 2015, the Complaint was amended to include Representative Plaintiffs Jason Swiger and Julio Cruz as named Plaintiffs. On October 29, 2015, by stipulation of the Parties, the Complaint was amended to dismiss Brian Jurden. Jason Swiger and Julio Cruz remain Representative Plaintiffs. On November 17, 2015, the action was transferred to the United States District Court for the Middle District of Pennsylvania and docketed as Case No. 1:15-cv-2196.

Consistent with the terms of the Parties' Settlement Agreement and by Stipulation, Plaintiffs' Third Amended Complaint is attached to the Joint Motion as Exhibit 4, which adds Rule 23 Class Action claims for relief for alleged violations of wage and hour laws in Maryland, North Carolina, Pennsylvania, and New Jersey, and adds as additional named plaintiffs Julia Williams (as class representative of the Maryland class), Tom Holt (as class representative of the North Carolina class), Nicholas DeRose (as class representative of the New Jersey

2

class), and Julio Cruz (as class representative of the Pennsylvania class).  Attached to the Joint Motion as Exhibit 5 is Defendant's Answer to the Third Amended Complaint.  The proposed Order that the Parties jointly request that this Court enter includes this Court's leave for Plaintiffs to file the Third Amended Complaint and for Defendant to file its Answer to the Third Amended Complaint.

The Action contests Defendant's practice and policy of classifying its route sales professionals ("RSPs") as exempt from overtime compensation under the "outside sales person" exemption in the FLSA and, if not exempt, failing to pay them overtime compensation for all hours they worked over forty (40) hours per workweek.

Defendant has filed an Answer to the Second Amended Complaint, and will shortly file an Answer to the Third Amended Complaint, disputing the material allegations both as to fact and law and denying liability to Plaintiffs or any Class Members as defined in the Settlement Agreement, and asserting several affirmative defenses.

### B.    <u>Negotiation of The Settlement</u>

Between December 2015 and January 2017, the Parties engaged in comprehensive discovery regarding Plaintiffs' claims and Defendant's defenses to such claims.  This included written discovery, including interrogatories and exchanging documents, nine depositions (seven Class Member RSPs and two

designated representatives of the Defendant), and a complete analysis of Class Members' overtime damages.  (Ex. 2, ¶¶ 20-27; Ex. 3, ¶ 18-25).

In February and March 2017, the Parties engaged in mediation that began at a formal mediation in New York City on February 7, 2017, with the assistance of Mediator Michael D. Young of JAMS.  The mediation extended several weeks thereafter under the Mediator's auspices, which led to a proposed settlement of the Action on the terms set forth in the attached Settlement Agreement.  (Ex. 2, ¶ 30; Ex. 3, ¶ 28).

### C.   The Settlement Terms

The terms of the Settlement Agreement include: the total Settlement Payment to be made by Defendant, the Effective Date of the Settlement, the calculation of Individual Payments to eligible recipients, the process for distributing Individual Payments to recipients, the proposed Service Awards to Class Representatives and Discovery Class Representatives in recognition of their services in this Action and the providing of general releases, and the proposed distribution of reasonable attorneys' fees and expense reimbursements to Class Counsel.  The Mediator assisted the Parties in formulating a methodology to amend the complaint to add Rule 23 class actions in four (4) states, as noted above: Pennsylvania, New Jersey, Maryland, and North Carolina.

The persons eligible for Individual Payments consist of Class Representatives, Existing Opt-In Party Plaintiffs who have already joined the case ("Opt-In Party Plaintiffs"), Rule 23 Class Members from Maryland, North Carolina, Pennsylvania, and New Jersey ("Rule 23 Class Members"), and Eligible FLSA Settlement Participants from other states who execute and return Consent and Release Forms ("Eligible FLSA Settlement Participants").

The FLSA Settlement encompasses the "FLSA Class", which includes FLSA Class Representatives Jason Swiger and Julio Cruz, the approximately 474 Existing Opt-In Party Plaintiffs, and the Eligible FLSA Settlement Participants (a list of names of all such persons is attached hereto as Exhibit A) as defined:

- "Existing Opt-In Party Plaintiffs" are the approximately 474 persons who have already submitted Consent Forms and have joined the Action, and who are current and former Route Sales Professionals ("RSPs") employed by Utz Quality Foods, Inc. between September 20, 2012 and September 30, 2016 (a list of the names of all such persons is attached hereto as Exhibit A).

- "Eligible FLSA Settlement Participants" are the approximately 588 persons who have not already joined the case, who are from states other than Maryland, North Carolina, Pennsylvania and New Jersey and who are current and former RSPs employed by Utz Quality Foods, Inc. between March 1, 2014 and September 30, 2016 (a list of the names of all such persons is attached hereto as Exhibit A).

The Class Action Settlement encompasses the "Rule 23 Classes", which are defined:

5

- The Rule 23 Class Members from Maryland are the approximately 140 persons who have not already joined this Action and who are current and former RSPs employed by Utz Quality Foods, Inc. between March 1, 2014 and September 30, 2016 (a list of the names of all such persons is attached hereto as Exhibit A).

- The Rule 23 Class Members from North Carolina are the approximately 177 persons who have not already joined this Action and who are current and former RSPs employed by Utz Quality Foods, Inc. between March 1, 2014 and September 30, 2016 (a list of the names of all such persons is attached hereto as Exhibit A).

- The Rule 23 Class Members from Pennsylvania are the approximately 451 persons who have not already joined this Action and who are current and former RSPs employed by Utz Quality Foods, Inc. between March 1, 2014 and September 30, 2016 (a list of the names of all such persons is attached hereto as Exhibit A).

- The Rule 23 Class Members from New Jersey are the approximately 49 persons who have not already joined this Action and who are current and former RSPs employed by Utz Quality Foods, Inc. between March 1, 2014 and September 30, 2016 (a list of the names of all such persons is attached hereto as Exhibit A).

The Class Members will release all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action (1) asserted in Plaintiffs' Stipulated Third Amended Collective and Class Action Complaint and (2) any other claims regarding the alleged failure to pay overtime compensation, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated

6

damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and applicable state laws through the Released Period.   The "Released Period" for Class Representatives and the Class Members shall mean the period between the date such persons first began their employment with Utz and the date the District Court enters final approval.

The Individual Payments for which Class Members are eligible will be calculated proportionally on each Class Member's overtime damages resulting from Defendant's failure to pay overtime compensation during the Calculation Period.  The "Calculation Period" for the FLSA Class Representatives and Existing Opt-In Party Plaintiffs shall mean the period between September 20, 2012 and September 30, 2016, and the "Calculation Period" for the Eligible FLSA Settlement Participants and Rule 23 Class Members in Maryland, North Carolina, Pennsylvania, and New Jersey shall mean the period between March 1, 2014 and September 30, 2016.

## II.   <u>MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT</u>

The law favors compromise and settlement of collective and class action suits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"). The proposed Settlement is subject to approval by the Court

7

pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  As shown in the

attached Declarations of Class Counsel Anthony J. Lazzaro (exhibit 2) and Hans

A. Nilges (exhibit 3), and as explained below, Court approval is warranted.

## A.    The FLSA Class Should Be Certified For Settlement Purposes

For settlement purposes of this action, the Parties stipulate to certification of

the following FLSA Class:

> All current and former Route Sales Professionals employed by
> Utz Quality Foods, Inc. between September 20, 2012 and
> September 30, 2016.[1]

Section 16(b) of the FLSA expressly authorizes a collective action to be

maintained "by any one or more employees" on behalf of "themselves and other

employees similarly situated."  29 U.S.C. § 216(b).

"Plaintiffs may be similarly situated when [allegedly] 'they suffer from a

single, FLSA-violating policy, and when proof of that policy or of conduct in

conformity with that policy proves a violation as to all the plaintiffs.'"

*Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014)(quoting

*O'Brien v. Ed. Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *aff'd*, 136

S. Ct. 1036 (2016).

---

[1] This Class will include the Existing Opt-In Party Plaintiffs and the Eligible FLSA
Settlement Participants.  Notice will only be mailed to Eligible FLSA Settlement
Participants employed between March 1, 2014 and September 30, 2016 as the
statute of limitations between September 20, 2012 and February 28, 2014 has run
for individuals employed during such time frame.

The standard for approval of an FLSA collective action requires only a determination that the compromise reached "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." See *Brumley v. Camin Cargo Control, Inc.*, No. 08-cv-1798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *Bredbenner v. Liberty Travel, Inc*., No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011). Courts in the Third Circuit apply the *Lusardi* factors to certification of an FLSA opt-in class. These factors are: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at *48 (D.N.J. 2011) (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987). As shown below and in the Lazzaro Declaration (*see* Exhibit 2) and Hans A. Nilges Declaration (*see* Exhibit 3), after consideration of these factors, the FLSA Class should be certified for settlement approval.

### 1. Only Minimal Factual and Employment Disparities Exist Between Plaintiffs and the FLSA Class Members

Plaintiffs assert that while factual and employment disparities exist between Plaintiffs and the FLSA Class Members, they are minimal. (Ex. 2, ¶ 34; Ex. 3, ¶ 32). In Plaintiffs' view, the only disparities that exist with respect to this matter

9

are the various distribution centers out of which Plaintiffs and the Class Members work, the various routes individual to each Plaintiff and Class Member, and the amount of overtime compensation to which each is entitled. (*Id*.). For purposes of this Motion, the Parties do not dispute that there are minimal disparities that would prevent such certification and that any disparities between Class Members do not outweigh the similarities of the policies and practices to which they were subjected. The preceding sentence is without prejudice to Defendant's position in any future legal proceeding, and shall not be taken as an admission that any employees are similarity situated for any future legal proceeding or otherwise.

"Under the FLSA, opt-in plaintiffs only need to be 'similarly situated.'" *Id*. The "similarly situated" requirement is less stringent than the requirement that common questions predominate in certifying class actions under Rule 23 of the Federal Rules of Civil Procedure. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584-585 (6th Cir. 2009) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095-96 (11th Cir .1996)); *see* Fed.R.Civ.P. 23. "The plaintiffs need not be identically situated." *Frye v. Baptist Memorial Hosp.*, No. CIV. 07-2708, 2010 WL 3862591 (W.D.Tenn. September 27, 2010) (citing *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, *3 (M.D.Tenn. Sept. 26, 2006)). "Rather, the question is simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." *Id*.

For purposes of settlement of this action, the Parties stipulate (without prejudice, in the case of Defendant) that the Class Representatives, the Existing Opt-In Party Plaintiffs, and the Eligible Settlement Participants identified in Appendix A are similarly situated, so as to certify them as a collective class under the FLSA, as follows:

- They are/were employed by Utz Quality Foods, Inc. as route sales professionals between September 20, 2012 and September 30, 2016;

- They are/were classified by Utz Quality Foods, Inc. as "exempt" employees;

- They spent much, and in some cases, the majority of their workweek driving an Utz vehicle with a Gross Vehicle Weight Rating of 10,000 pounds or less and delivering product to Utz customers on a designated route. The Parties recognize there is a good faith dispute as to whether that activity constitutes work performed incidental to and in conjunction with the employee's own outside sales or solicitations that would be regarded as outside sales work under the applicable regulations, 29 C.F.R. § 541.504(a).

- They had the same job titles and had the same job descriptions between September 20, 2012 and September 30, 2016;

- They are/were subjected to the same Utz policies;

- They were paid commissions during the period of time between September 20, 2012 and September 30, 2016;

11

- They work/worked in excess of 40 hours in at least one (1) workweek within the period of time between September 20, 2012 and September 30, 2016; and

- They were not paid overtime compensation for the hours they worked in excess of 40 each workweek within the period of time between September 20, 2012 and September 30, 2016.

As such, Class Representatives and the FLSA Class all held the same positions with Defendant within the same period of time, had the same job titles and job descriptions, were subjected to the same policies, were paid in a similar manner, and allegedly suffered from the same FLSA violations.

### 2. Defendant's Primary Defense Is Identical For Class Representatives and Class Members

In this matter, Defendant has asserted the identical primary defense to the claims on behalf of each Class Representative and the Class Members. In particular, Defendant asserts, among other defenses, that Plaintiffs and the Class Members are all "exempt" under the outside sales employee exemption. As such, the same primary defense applies to each Plaintiff and Class Member.

### 3. The Settlement Distributions Are Fair, Reasonable, and Adequate

The standard for approval of an FLSA collective action requires only a determination that the compromise reached "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *See Brumley v. Camin Cargo Control,*

12

*Inc.,* No. 08-cv-1798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *Bredbenner v. Liberty Travel, Inc*., No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011).

In the present case, the Settlement Agreement provides that Defendant's Settlement Payment, after deduction of the Service Awards to Class Representatives and Discovery Class Representatives, attorneys' fees, litigation reimbursements to Class Counsel, and costs of an independent third-party claims administrator, will be divided into Individual Payments for which participants in the settlement will be eligible. All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable, and adequate for Class Representatives and the Class Members.

Notably, the United States District Court for the Eastern District of Pennsylvania has recently approved a substantially similar settlement. *See*, *Drummond v. Herr Foods Inc.*, No. 2:13-CV-05991-BMS, 2016 WL 7013512, at *1 (E.D. Pa. Sept. 9, 2016).

a)   ***The Individual Payments Are Fair, Reasonable, and Adequate***

All Individual Payments will be calculated proportionally on each Class Member's overtime damages resulting from Defendant's alleged failure to pay

13

them overtime compensation and the rate of one and one-half their regular rates for all hours worked over 40 in a workweek during the Calculation Period.  (Ex. 2, ¶ 38; Ex. 3, ¶ 35).  The "Calculation Period" for the FLSA Class Representatives and Existing Opt-In Party Plaintiffs shall mean the period between September 20, 2012 and September 30, 2016, and the "Calculation Period" for the Eligible FLSA Settlement Participants and Rule 23 Class Members shall mean the period between March 1, 2014 and September 30, 2016.  (Ex. 2, ¶ 39; Ex. 3, ¶ 37).

If approved by the Court, the Proposed Settlement will provide substantial payments to Class Representatives and Class Members for unpaid overtime compensation.  (Ex. 2, ¶ 35; Ex. 3, ¶ 33).  During the three-year limitations period, Class Representatives and Class Members were allegedly denied $10,154,886.93 in overtime compensation for ten (10) overtime hours per workweek or $5,641,603.85 in overtime compensation for five (5) overtime hours per workweek.  During the two-year limitation period, Class Representatives and Class Members were allegedly denied $6,786,233.14 in overtime compensation for ten (10) overtime hours per workweek or $3,770,129.52 in overtime compensation for five (5) overtime hours per workweek. (Ex. 2, ¶ 40; Ex. 3, ¶ 38).

Before deductions, the Proposed Settlement recovers approximately 31.1% of the overtime compensation Class Representatives and the Class Members were allegedly denied over the three-year limitations period, or approximately 46.6% of

14

the overtime compensation they were allegedly denied over the two-year

limitations period, assuming the employees worked an average of 47.5 hours per

week.   (Ex. 2, ¶ 41; Ex. 3, ¶ 39).

The substantial payments that the Class Members will receive is comparable

to the payments found to be reasonable in a similar, recent case, *Drummond v.*

*Herr Foods* and taking into account the greater significance of Defendant's good

faith and non-willfulness defenses (which were based in large part on a

determination in favor of Utz in an  "outside sales" exemption case before the New

Jersey Department of Labor in 2013), Utz's decertification defense (which was

based on depositions and affidavits of RSPs), and Utz's arguments on the merits of

the exemption defense which were supported by two experts.

   **b)** **Class    Representatives'    and    Discovery    Class**
    **Representatives' Service Awards Are Proper and**
    **Reasonable**

Service awards to a representative plaintiff recognizing the value of his or

her services on behalf of other participants are proper. *Bredbenner v. Liberty*

*Travel, Inc*., No. 09-cv-905, 2011 WL 1344745, *64 (D.N.J. Apr. 8, 2011).  Their

purpose is to compensate Class Representatives "for the services they provided and

the risks they incurred during the course of the litigation." *Cullen v. Whitman*

*Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000); *Sullivan v. DB Invs., Inc.*, 667

F.3d 273, 333 n.65 (3d Cir. 2011).  It is not unusual for initiating plaintiffs in

employment lawsuits, such as this, to receive significant enhancement awards in recognition of their service to the entire class/collective. *See*, *e.g.*, *Tavares v. S-L Distribution Co., Inc.*, 2016 U.S. Dist. LEXIS 57689, *35 (M.D. Pa. May 2, 2016) (approving enhancement awards of $15,000 each); *Calarco v. Healthcare Services Group, Inc.*, 2015 U.S. Dist. LEXIS 46950, *6 (M.D. Pa. Apr. 7, 2015) (approving $7,500 service award); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985)(approving service award of $20,000 to each class representative);

Service awards to representative plaintiffs are typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case. *Id.*

In the present case, the Lazzaro Declaration (*see* Exhibit 2) and Nilges Declaration (*see* Exhibit 3) establish that the proposed Service Awards are proper and reasonable. Class Representatives' and Discovery Class Representatives' services were extensive and effective. (Ex. 2, ¶ 51; Ex. 3, ¶ 49). They provided extensive factual information to Class Counsel and faithfully engaged in calls and other communications with Class Counsel. (*Id.*). Moreover, Class Representatives subjected themselves to the responsibilities of serving as named plaintiffs in a lawsuit against their employer. (*Id.*). Further, Discovery Class Representatives each took time off work and traveled to meet with Class Counsel to prepare for

16

their deposition and attend nearly a full day of deposition. (*Id.*). Some of the Discovery Class Representatives were current employees of and/or independent contractors in business with Defendant and subjected themselves to testimony against their current employer/business partner. (*Id.*). The participation and active involvement of the Class Representatives and the Discovery Class Representatives exceeded the involvement of other Class Members, and their participation, active involvement, and testimony assisted in the ultimate resolution of this matter. (*Id.*).

Pursuant to the terms of the Settlement Agreement, and in addition to their Individual Payments, the following payments will be made as Representative Payments: FLSA Class Representatives Jason Swiger and Julio Cruz will each receive $15,000.00; Rule 23 Class Representatives Julia Williams, Tom Holt, and Nicholas DeRose will each receive $500.00; former employee Discovery Class Representatives Jamie Wallet and Steven Cosentine will each review $500.00; current employee Discovery Class Representatives Anthony Biondino, Charles Shakal, and Jeremy Weaver, who were not required to take unpaid leave to attend their respective depositions, will each receive $450.00. (Ex. 2, ¶ 50; Ex. 3, ¶ 48).

Courts in this District have awarded service awards similar to those proposed here. *See e.g., In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 282, 284 (3d Cir. 2009) ($10,000 service award); *In re Janney,* 2009 U.S. Dist. LEXIS 60790, at *37 (E.D. Pa. 2009) ($20,000 service payment in FLSA and

17

Pennsylvania wage and hour case); *Drummond v. Herr Foods Inc.*, No. 2:13-CV-05991-BMS, 2016 WL 7013512, at *1 (E.D. Pa. Sept. 9, 2016) (awarding various service awards ranging from $500 to $7,500); *Martin v. Foster Wheeler Energy Corp.*, No. 3:06-cv-0878, 2008 WL 906472, at *8-*9 (M.D. Pa. Mar. 31, 2008) (approving incentive award for named representatives a total of $10,000.00); *Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named plaintiff's] cooperation.  Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (approving service payments of $10,000 to each of eight named plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000).  Such amounts are appropriate considering the risks the class representatives have incurred. *Id.* at 63-64 ("By brining suit against a major company[,]…they risk their good will and job security in the industry for the benefit of the class as a whole.")

### c)   The Attorneys Fees and Expenses to Class Counsel Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

The attorney's fees and costs in this matter are requested as a percentage of the settlement, which is the favored method for calculating attorney's fees in such cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Prudential Ins. Co. America Sales Practice Litig. Agent*, 148 F.3d 283, 333 (3d Cir. 1998); *Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011), *52-53 (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Id*. at *53, *citing, Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009); *See also In re Janney*, 2009 U.S. Dist. LEXIS 60790; *Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D. NJ. 2006).

The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains "*disfavored…*" *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods.*

19

*Liab. Litig.*, 55 F.3d at 821-822 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of "economic reality" of such arrangement).

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Court held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).  *Fegley* was followed in *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here.  Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel.  The district court "make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved."

20

*Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach... provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'"). In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. The Individual Payments represent approximately 31.1% of the overtime

compensation Class Representatives and the Class Members were allegedly denied over the three-year limitations period, or approximately 46.6% of the overtime compensation they were allegedly denied over the two-year limitations period, assuming the employees worked an average of 47.5 hours per week, before deduction of the Service Awards to Class Representatives, attorneys' fees, and litigation reimbursements to Class Counsel.   (Ex. 2, ¶ 41; Ex. 3, ¶ 38.)   The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and the Class.

In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund.  *See In re Gen. Motors*, 55 F.3d at 822, *citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990).  In the instant case, Class Counsel has requested a fee of thirty-three and one-third percent (33 1/3%) of the settlement fund, totaling $833,333.33 and expenses are estimated to be in the range of $69,960.07, pursuant to Plaintiffs' fee agreement with Class Counsel, and the conditional certification notice issued to the Class Members on December 14, 2015 and November 30, 2016. (Ex. 2, ¶ 42; Ex. 3, ¶ 40.)

"The Third Circuit has held that 'a district court should consider seven factors when analyzing a fee award in a common fund case," which include:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 WL 5276109, at *5 (M.D. Pa. Sept. 17, 2013); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 193 n. 1 (3d Cir. 2000); *Ford v. Lehigh Valley Restaurant Group, Inc.*, 2016 U.S. Dist. LEXIS 31732, *3-4 (M.D. Pa. Mar. 10, 2016).

### (i) The size of the fund created and number of persons benefitted

The size of the fund created is $2,500,000.00.  It will benefit 1,879 individuals currently or formerly employed by Utz throughout the United States.

### (ii) The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel

At this point, there have been no objections received from Class Members, and the Class Representatives support the settlement.  The FLSA Class Members will have the opportunity to opt-in to the settlement, and the Rule 23 Class Members will have the opportunity to opt-out and/or object to the settlement.

23

### (iii)   The skill and efficiency of the attorneys involved

Class counsel are highly qualified and experienced wage and hour lawyers as established by the Declarations of Anthony J. Lazzaro (exhibit 2) and Hans A. Nilges (exhibit 3).

### (iv)   The complexity and duration of the litigation

This case has been pending for over 18 months.  (Ex. 2, ¶ 46; Ex. 3, ¶ 44.)  It is a complex FLSA matter in which Plaintiffs have alleged that Defendant misclassified them as "exempt" employees and failed to pay them overtime compensation for the hours they worked over 40 in a workweek.  (*Id*.)  Defendant has plead as an affirmative defense that Plaintiffs and Class Members are exempt under the "outside sales employees" exemption.  (*Id*.)  This case has the potential to go on for many years; for the last 18 months it has been hard fought by both sides.  (*Id*.)  In accordance with the Court's scheduling order, there were another 40 depositions to be taken in this case.  (*Id*.)  Defendant anticipates moving for decertification and for summary judgment.  If Plaintiffs were to prevail on both of those motions, a lengthy trial would have been conducted, with many witnesses testifying and volumes of exhibits admitted into evidence.  (*Id*.)  Additionally, either party would have likely appealed.  (*Id*.)  With prior knowledge of the complexity, risks, and likely duration of litigation, Class Counsel took the case and assumed the risk. (*Id*.)

24

**(v)     The risk of non-payment**

Had this case not settled, Class Counsel would have continued to vigorously litigate the case without any promise of success and compensation.  (Ex. 2, ¶ 47; Ex. 3, ¶ 45.)  At four steps of the litigation (decertification, dispositive motions, trial, appeal), Defendant could have succeeded.  (*Id.*) Therefore, the Class Members were at significant risk for non-payment.  This risk of non-payment strongly supports the amount of legal fees requested here.

**(vi)    The amount of time devoted to the case by Class Counsel**

This case has been pending for over 18 months, during which counsel for both Parties has engaged in substantial work and devoted significant time to this matter.  (*See* Exhibits 2 and 4.)

Prior to filing the Action, Class Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant, and obtained declarations of witnesses and potential opt-in plaintiffs.  (Ex. 2, ¶ 20; Ex. 3, ¶ 18.)

After filing the Action, Class Counsel obtained additional investigation information and declarations from Class Representatives, Opt-In Party Plaintiffs, and numerous other employees who are members of the proposed settlement class.  (Ex. 2, ¶ 21; Ex. 3, ¶ 19.)  Class Counsel has surveyed, interviewed, and engaged in numerous telephone conversations with Class Representatives and Opt-In Party

25

Plaintiffs.  (Ex. 2, ¶ 21-22; Ex. 3, ¶ 19-20.)  The legal issues in the case were thoroughly researched by counsel for the Parties, and heavily disputed by Defendant.  (Ex. 2, ¶ 23; Ex. 3, ¶ 21.)

Interrogatories and Requests for Production of Documents were served upon and answered by the Parties, including to over 30 of the Opt-In Party Plaintiffs who answered the Interrogatories and provided documents.  (Ex. 2, ¶ 24; Ex. 3, ¶ 22.)  Over 34,000 pages of documents were exchanged between, and reviewed and analyzed by, the Parties.  (*Id*.)  A complete analysis of each Class Member's overtime damages resulting from Defendant's practice and policy of failing to pay overtime compensation to Class Representatives and Class Members at one and one-half times their "regular rate" was performed, by reviewing and analyzing the Class Members' time and pay data and records, and verifying same with Class Members. (Ex. 2, ¶ 25; Ex. 3, ¶ 23.)  Additionally, Class Counsel took two (2) Rule 30(b)(6) depositions of Defendant, and Defendant took the depositions of Class Representative Julio Cruz and seven (7) Opt-In Party Plaintiffs.  (Ex. 2, ¶ 26; Ex. 3, ¶ 24.)  Class Counsel traveled from the Cleveland and/or Massillon Ohio area to Harrisburg, Pennsylvania on multiple occasions to prepare Class Representative and six (6) Opt-In Party Plaintiffs for depositions and attend those depositions, and to take the two (2) Rule 30(b)(6) depositions.  (Ex. 2, ¶ 27; Ex. 3, ¶ 25.)  Additionally, Class Counsel traveled from Cleveland, Ohio to Richmond,

Virginia and spent three (3) days preparing an Opt-In Party Plaintiff for her deposition, attending the deposition, and traveling back to Cleveland, Ohio. (Ex. 2, ¶ 27.) The Parties engaged in numerous telephone calls and email correspondence in connection with discovery and other matters; this case was heavily litigated by both sides. (Ex. 2, ¶ 28; Ex. 3, ¶ 26.) Additionally, the Parties attended a full day of Mediation and exchanged multiple emails and phone calls with the Mediator to finally reach a resolution. (Ex. 2, ¶ 30; Ex. 3, ¶ 28.)

### (vii)   Awards in similar cases

Class Counsel's request is in line with what is routinely provided in such cases. *See, e.g. Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 WL 5276109, at *6 (M.D. Pa. Sept. 17, 2013) (an award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit); *Martin v. Foster Wheeler Energy Corp.,* 2008 WL 906472, at *5 (M.D. Pa. 2008) (same); *Bredbenner*, 2011 WL 1344745 at *60-61 (awarding 32.6% of $3 million, or $978,000, plus costs, in wage and hour case); *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3 % in common fund case and citing to ten cases from this Circuit holding the same).

The attorneys' fees requested by Class Counsel should not be altered because counsel efficiently resolved this case prior to completing discovery rather than prolonging the litigation and increasing the costs (including deposition

27

expenses) and potential fees.  As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation."  Manual for Complex Litigation (4th) § 14.121.

A statement of expenses will be submitted by Class Counsel prior to the Fairness Hearing.   Expenses are currently estimated to be approximately $69,960.07.  All such expenses were and/or will be incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of Class Representatives and the Class Members, and mailing notice to the 1,879 Class Members and attending the Fairness Hearing.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

### 4.    There Is A Bona Fide Dispute Between the Parties

 "To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 WL 1344745, at *50 (citing *Lynn's,* 679 F.2d at 1354).  Typically, courts regard the adversarial nature of a litigated FLSA case to

be an adequate guarantor of fairness. *Lynn's,* 679 F.2d at 1353-54; *Bredbenner,*

2011 WL 1344745, at *51.

The Parties agree and stipulate that there are several disputed legal and

factual issues, including:

- Whether Class Representatives and the Class Members were exempt from the overtime provisions of the FLSA under the outside sales employee exemption;

- Whether Class Representatives and the Class Members had the primary duty of making sales;

- Whether Class Representatives and the Class Members were properly paid on a commission basis;

- Whether Class Representatives and the Class Members were entitled to overtime compensation;

- Whether Class Representatives and all of the Class Members worked over 40 hours in any given workweek;

- The number of hours Class Representatives and each of the Class Members worked in any given workweek;

- The damages allegedly suffered by Class Representatives and each of the Class Members;

- Whether Defendant is liable for liquidated damages;

- Whether Defendant can establish a "good faith" defense to the claims of Class Representatives and the Class Members;

- Whether the conditionally certified FLSA class would be decertified prior to trial;

- Whether the three (3) year or two (2) year statute of limitations applies; and

- Whether Defendant violated the FLSA, and whether such violation was willful.

Since numerous legal and factual disputes remain in this action, the settlement reached by the Parties is a fair, reasonable, and adequate resolution of a *bona fide* dispute.

## III.   MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

### A.   Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted

#### 1.   Certification of the Rule 23 Classes Are Appropriate For Purposes of Settlement

For settlement purposes of this action, the Parties stipulate to certification of the Rule 23 Classes (without prejudice in the case of Defendant) and for Notice to go out to:

> All current and former Route Sales Professionals employed by Utz Quality Foods, Inc. in North Carolina, New Jersey, Maryland and Pennsylvania between March 1, 2014 and September 30, 2016

A settlement class will be certified if it meets the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See, e.g., Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 309 (3d Cir. 1998); *In re Imprelis*

*Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 149323, at *9-10 (E.D. Pa. 2013); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 306 (E.D. Pa. 2012); *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)).

The proposed classes meet Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391

F.3d 516, 527 (3d Cir. 2004).

### a)      *The Numerosity Requirement of Rule 23(a)(1) Is Met*

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Courts in the Third Circuit typically hold that a putative class of about 40 is sufficient to meet this requirement.  *See e.g., Ripley*, 287 F.R.D. at 307.  In the instant case the Classes, consisting of approximately 140 members in Maryland, 177 members in North Carolina, 451 members in Pennsylvania, and 49 members in New Jersey, are "so numerous that joinder of all members is impracticable."

### b)      *The Commonality Requirement of Rule 23(a)(2) Is Met*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Common issues of law or fact are presented by the Classes' claims, including:

a) Whether Defendant misclassified Plaintiffs and other Class Members as "exempt";

b) Whether Plaintiffs and other Class Members were entitled to overtime compensation for hours worked over forty (40) per workweek; and

c) Whether Defendant had a good faith basis to conclude that its failure to pay overtime to the Plaintiffs and other Class Members was lawful.

As stipulated by the Parties, and restated herein, the facts common to the Rule 23 Classes include:

- They are/were employed by Utz Quality Foods, Inc. as route sales professionals between March 1, 2014 and September 30, 2016;

- They are/were classified by Utz Quality Foods, Inc. as "exempt" employees;

- They spent much, and in some cases, the majority of their workweek driving an Utz vehicle with a Gross Vehicle Weight Rating of 10,000 pounds or less and delivering product to Utz customers on a designated route. The Parties recognize there is a good faith dispute as to whether that activity constitutes work performed incidental to and in conjunction with the employee's own outside sales or solicitations that would be regarded as outside sales work under the applicable regulations, 29 C.F.R. § 541.504(a).

- They had the same job titles and job descriptions between March 1, 2014 and September 30, 2016;

- They are/were subjected to the same Utz policies;

32

- They were paid commissions during the period of time between March 1, 2014 and September 30, 2016;

- They work/worked in excess of 40 hours in at least one (1) workweek within the period of time between March 1, 2014 and September 30, 2016; and

- They were not paid overtime compensation for the hours they worked in excess of 40 each workweek within the period of time between March 1, 2014 and September 30, 2016.

### c)    The Typicality Requirement of Rule 23(a)(3) Is Met

The typicality requirement of Rule 23(a)(3) is satisfied  for purposes of preliminarily approving the settlement, because Plaintiffs' claims are reasonably coextensive with those of absent class members, and because Plaintiffs possess the same interest and suffered the same injury as the absent class members. *See Fry*, 198 F.R.D. at 468; *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). Class Representatives are adequate representatives of the Classes in that they have common interests with other class members and they have vigorously prosecuted the interests of the class through qualified counsel.   *Senter v. General Motors Corp.*, 532 F.2d 511, 524-525 (6th Cir. 1976); *Accord Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).  Class Representatives' claims are based on Defendant allegedly misclassifying them as "exempt" employees, and, thus allegedly denying them overtime compensation for all hours over 40 in a workweek.  See, e.g., *Williams v. Aramark Sports, LLC,* 2011 U.S. Dist. LEXIS

102173, *10 (E.D. Pa. 2011) (finding typicality where named plaintiff "was paid under the same payroll policies as the rest of the Class Members, and those payroll policies form the basis of the Complaints in these cases").   Thus, Class Representatives' claims are typical of the Classes they seek to represent, and Class Representatives seek to obtain the alleged overtime damages of the Classes they seek to represent.

### d)      The Adequacy Requirement of Rule 23(a)(4) is Met

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." The adequacy requirement "encompasses two distinct inquiries (1) whether the named plaintiffs' interests are sufficiently aligned with the absentees, and (2) [whether] it tests the qualifications of counsel to represent the class." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 303 (3rd Cir. 2005) (internal quotation marks omitted).

In the instant case, Class Representatives' interests are aligned with those of the Class Members they seek to represent as they are seeking to recover overtime compensation from Defendant as a result of Defendant allegedly misclassifying them as "exempt".   Additionally, Class counsel are highly qualified and experienced wage and hour lawyers as shown by the Declarations of Anthony J. Lazzaro (exhibit 2) and Hans A. Nilges (exhibit 3).

34

### e)    The Predominance and Superiority Requirements of Rule 23(b)(3)

If the requirements of Rule 23(a) are met, as they are here, a Class may be certified under Rule 23(b) if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members", and "that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy".  Pertinent to these findings include:

    (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D)    the likely difficulties in managing a class action.

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc). The unpaid overtime issues presented under the state law claims predominate over any individual hypothetical issues or questions.

35

Class-wide resolution of this controversy is superior to the alternative of litigating many individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

## 2. The Class Notices Satisfy Rule 23 and Due Process

The United States Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014. The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (quoting *Mullane*); *LaChance v. Harrington,* 965 F. Supp. 630, 636 (E.D. Pa. 1996).

Furthermore, "[a]lthough the notice need not be unduly specific. . . the notice document must describe, in detail, the nature of the proposed settlement, the

circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 308-10 (3d Cir. 2004) (internal quotations omitted).

The form and method of the Notice proposed by the Parties satisfies due process considerations and requirements. The Rule 23 Class Notice (attached to Settlement Agreement as Exhibit F) provides detailed information about the claims alleged in this suit, the terms of the settlement, the formula used to calculate each Class Member's allocation, the deductions made for Class Representative Payments and attorneys' fees and costs, information about the date and time for the Fairness Hearing, the Class Members' rights to object or exclude themselves, the deadlines and procedures for objecting or excluding themselves, and contact information of Class Counsel to if the Class Members seek to obtain additional information.

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in Defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77); *LaChance v. Harrington,* 965 F. Supp. 630, 636 (E.D. Pa. 1996) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The Supreme Court has specifically held that

individualized notice by mail to the last known address was the "best notice practicable" in a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

The forty-five (45) day return deadline, with extra time built in for a second mailing, likewise is generally regarded as acceptable. *See, e.g., Aboud v. City of Wildwood*, 2013 U.S. Dist. LEXIS 70083, at *23 (D.N.J. 2013) ("The court finds that a 45-day opt-in period is appropriate here"); *Arpi v. Sternbach Holdings*, LLC, 2012 U.S. Dist. LEXIS 183648, at *4 (S.D.N.Y. Dec. 10, 2012) (45 days).

In the present case, the proposed Rule 23 Class Notice satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the Notices will be sent to Class Members via first-class mail using the addresses shown in Defendant's records and the Class Members will have 45 days in which to decide whether to opt-out or object to the settlement.

### B.  Approval of the Settlement Under Rule 23(e) Is Warranted

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate". *DiClemente v. Adams Outdoor Advertising, Inc.*, 2016 U.S. Dist. LEXIS 88394, *5 (M.D. Pa. July 8, 2016). As described in detail hereinabove, as well as is supported by the Declarations of Lazzaro (Exhibit 2) and Nilges (Exhibit 3), the settlement if fair, reasonable, and adequate.

38

The law favors compromise and settlement of collective and class action suits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *D.R. by MR. v. East Brunswick Bd. of Educ*., 109 F.3d 896, 901 (3d Cir. 1997) ("they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the courts."); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation.")

### 1.    The Four-Factor Standard Is Satisfied

"Before sending notice of the settlement to the class, the court will usually approve the settlement preliminarily.  This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of

the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *Cendant Corp. Litigation*, 264 F.3d 201, at 232 n. 18 (3d Cir. 2001)

As shown below and in the Declarations of Lazzaro (Exhibit 2) and Nilges (Exhibit 3), the four-factor standard supports approval of the Settlement.

### a)       *The Settlement Negotiations Occurred At Arm's Length*

The Parties' counsel each have extensive experience litigating FLSA and other wage and hour claims, including claims for unpaid hours worked.  A Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties, achieved under the auspices and assistance of Mediator Michael D. Young of JAMS, who is experienced in mediating wage and hour class action and other class and complex claims.

### b)       *There Was Sufficient Discovery*

This case has been pending for over 18 months, during which the Parties have engaged in comprehensive discovery regarding Plaintiffs' claims and Defendant's defenses to such claims.  This included written discovery, including interrogatories and exchanging documents, depositions, and a complete analysis of Class Members' overtime damages.  (Ex. 2, ¶ 46; Ex. 3, ¶ 44).

40

The Parties engaged in substantial investigation prior to negotiating the Settlement.  Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant, and obtained declarations of witnesses and potential opt-in plaintiffs.  (Ex. 2, ¶ 20; Ex. 3, ¶ 18.)

After filing the Action, Class Counsel obtained additional investigation information and declarations from Class Representatives, Opt-In Party Plaintiffs, and numerous other employees who are members of the proposed settlement class.  (Ex. 2, ¶ 21; Ex. 3, ¶ 19.)  Class Counsel has surveyed, interviewed, and engaged in numerous telephone conversations with Class Representatives and Opt-In Party Plaintiffs.  (Ex. 2, ¶ 22; Ex. 3, ¶ 20.)  The legal issues in the case were thoroughly researched by counsel for the Parties, and heavily disputed by Defendant.  (Ex. 2, ¶ 23; Ex. 3, ¶ 21.)

Interrogatories and Requests for Production of Documents were served upon and answered by the Parties, including to over 30 of the Opt-In Party Plaintiffs who answered the Interrogatories and provided documents.  (Ex. 2, ¶ 24; Ex. 3, ¶ 22.)  Over 43,000 documents were exchanged between, and reviewed and analyzed by, the Parties.  (*Id*.)  A complete analysis of each Class Member's overtime damages resulting from Defendant's practice and policy of allegedly failing to pay overtime compensation to Class Representatives and Class Members at one and

one-half times their "regular rate" was performed.  (Ex. 2, ¶ 25; Ex. 3, ¶ 23.)

Additionally, Class Counsel took two (2) Rule 30(b)(6) depositions of Defendant,

and Defendant took the depositions of Class Representative Julio Cruz and six (6)

Opt-In Party Plaintiffs.  (Ex. 2, ¶ 26; Ex. 3, ¶ 24.)

The Parties engaged in significant research and legal argument.  All of

aspects of the dispute have been sufficiently and thoroughly investigated and are

well-understood by both sides.  (Ex. 2, ¶ 29; Ex. 3, ¶ 27.)

### c)   *The Proponents of the Settlement are Experienced in Similar Litigation*

The Parties' counsel are experienced in wage-and-hour class actions, have

acted in good faith, and have represented their clients' best interests in reaching the

Settlement Agreement.   Counsel support the Settlement Agreement as fair and

reasonable, and in the best interest of the Class as a whole, as described in the

Lazzaro Declaration (*see* Exhibit 2) and Nilges Declaration (*see* Exhibit 3).   The

recommendation of settlement by experienced counsel is entitled to significant

weight.  See, e.g., *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa.

1995) ("in determining the fairness of a proposed settlement, the court should

attribute significant weight to the belief of experienced counsel that settlement is in

the best interest of the class"); *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481-

42

82 (E.D. Pa. 1975) (Counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses")

> ### d)      *The Class Representatives Concur with the Settlement; To Date, No Members of the Class Have Objected*

While this Court will not be in a position to fully evaluate the extent of any objections until after the settlement has been preliminary approved and formal Notice has been sent to Class Members, the Class Representatives concur with and have agreed to the Settlement.

## IV.   **CONCLUSION**

Class Representatives and Defendant request that this Court enter the Orders attached to the Settlement Agreement as Exhibits C and E and:

1. Approve the Parties' Settlement Agreement, attached hereto as Exhibit 1;

2. Grant Plaintiffs leave to file a Third Amended Complaint and permitting the filing of Defendant's Answer to the Third Amended Complaint;

3. Finally approve the Parties' settlement of the Fair Labor Standards Act ("FLSA") Class and Notice to the Opt-In Party Plaintiffs, attached hereto as Exhibit D;

4. Designate Jason Swiger and Julio Cruz as FLSA Class Representatives and finally approve their requests for Service Awards;

5. Finally approve the Service Awards to each Discovery Class Representative;

6. Preliminarily approve the Parties' settlement of the Rule 23 Classes and Notice to the Rule 23 Class Members, attached hereto as Exhibit F, pursuant to Fed. R. Civ. P. 23(e);

7. Designate Julio Cruz (for Pennsylvania), Julia Williams (for Maryland), Tom Holt (for North Carolina), and Nicholas DeRose (for New Jersey) as Rule 23 Class Representatives and preliminarily approve their requests for Service Awards; and

8. Designate Anthony J. Lazzaro and Chastity L. Christy of The Lazzaro Law Firm, LLC and Shannon M. Draher and Hans A. Nilges of Nilges Draher, LLC as Class Counsel, and preliminarily approve their request for attorneys' fees and costs.


Respectfully submitted,


 /s/ Chastity L. Christy             / s/ Brian P. Downey
Chastity L. Christy (0076977)        Brian P. Downey
Anthony J. Lazzaro (0077962)         Pepper Hamilton LLP
Lori M. Griffin (0085241)            Suite 200
The Lazzaro Law Firm, LLC            100 Market Street
920 Rockefeller Building             P.O. Box 1181
614 W. Superior Avenue               Harrisburg, PA  17108-1181
Cleveland, Ohio 44113                downeyb@pepperlaw.com

Phone: 216-696-5000
Facsimile: 216-696-7005
chastity@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
NILGES DRAHER LLC
7266 Portage Street, N.W.
Suite D
Massillon, Ohio 44646
Telephone:  330-470-4428
Facsimile:  330-754-1430
hans@ohlaborlaw.com
sdraher@ohlaborlaw.com

*Class Counsel*

Richard J. Reibstein
Pepper Hamilton LLP
620 Eighth Avenue
37th Floor
New York, NY 10018
reibsteinr@pepperlaw.com

Christopher J. Moran
Lee E. Tankle
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
215.981.4000
moranc@pepperlaw.com

Kali T. Wellington-James
Pepper Hamilton LLP
400 Berwyn Park
899 Cassatt Road
Berwyn, PA  19312-1183
wellingk@pepperlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2017, a copy of the foregoing *Joint Motion For Final Approval of FLSA Settlement and Joint Motion For Preliminary Approval Of Class Action Settlement* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

  /s/ Chastity L. Christy
Attorney for Plaintiff